1
2
3
4
5
6
7                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
8                                        AT SEATTLE
9

10   JANE KANG,                                  Case No. 2:24-cv-00294-RSM

11              Plaintiff,                        ORDER GRANTING MOTION FOR
                                                 SUMMARY JUDGMENT
12          v.

13   THE BOEING COMPANY,

14              Defendants.

15

16                              I.      INTRODUCTION

17

18          This matter comes before the Court on Defendant Boeing's Motion for Summary

19   Judgment. Dkt #27. Plaintiff Jane Kang opposes. Dkt. #39. Neither party has requested oral

20   argument. For the following reasons, the Court GRANTS Boeing's Motion.

21                              II.     BACKGROUND

22

23          Jane Kang was employed by Boeing from 2010 to 2021. She was first hired as an

24   attorney in the Boeing Law Department. Dkt #28-1 ("Kang Dep."), 124:14–17.

25          Ms. Kang performed well as an attorney. Dkt #28-2 ("Station Dep."), 22:8–23:6.

26          Upon hire, Plaintiff signed various policies, including Boeing's Code of Conduct

27   policy, and re-signed this policy annually. Dkt #28("Shapero Decl."), ¶ 4; Dkt. #28-3.

28

In 2018, Boeing created the Commercial Derivative Aircraft group ("CDA") in its Boeing Defense, Space, and Security ("BDS") business unit. Kang Dep. at 130:18–21. Soon after this group was formed, Boeing transferred Plaintiff to fill a Contracts Director role in this BDS Finance group. Kang Dep. at 130:18–131:25. As a Contracts Director, Plaintiff led a team that negotiated contracts with military and governmental customers who purchased Boeing commercial derivative aircraft.  Shapero Decl. at ¶ 5; Dkt. #28-4.

Boeing states that Ms. Kang gained a reputation for mistreating and offending her colleagues, subordinates, and customers, citing to the declarations of six formers co-workers whose statements generally support this characterization. *See* Dkt. #29 ("Breding Decl."), ¶¶ 4–8; Dkt. #30 ("Gillard Decl."), ¶ 5; Dkt. #31 ("Jones Decl.,") ¶¶ 3–4; Dkt. #32 ("Malveaux Decl."), ¶¶ 5–6; Dkt. #33 ("Opdahl Decl."), ¶ 3–5, 7; and Dkt. #35 ("Sundstrom Decl."), ¶¶ 3–8.

Ms. Kang denies this and states that she was being excluded from meetings and other events by BDS Chief Financial Officer Carol Hibbard because of racial animus. Dkt. #40 ("Kang Decl.") ¶¶ 17-18.

Ms. Kang will also testify that Anne Marie Bender, BDS Legal Counsel, and Becky Davies, Ms. Kang's temporary manager, were constantly "sniping" at her during meetings and telling her she "was wrong." Kang Dep. at 188:12-191:25.

Carol Hibbard will testify she did exclude Ms. Kang from certain meetings because Ms. Kang was difficult and argumentative, and because a P-8 customer requested not to interact with her. Dkt. #28-6 ("Hibbard Dep."), 12:13–17:20.

Ms. Kang will also testify that she angered Boeing attorney Darrin Hostetler after giving advice. Kang Dep. at 228:6–13. She states that Mr. Hostetler screamed and yelled at her about

it. *Id.*, 232:13–25. Ms. Kang further states she had several "bizarre" interactions with Boeing attorney Jake Phillips saying "there were, like, fleeting things that I just don't even know how I can describe it." *Id.*, 239:5–12. She was repeatedly unable to describe her negative interactions with detail.

Ms. Kang states that in December 2019 her manager, Will Station, stated that the situation made him uncomfortable, and that, "all I can say is that you're the only Asian executive in BDS Finance," apparently referring to how Ms. Kang's superiors, Ms. Hibbard and Ms. Carett, thought of her. Kang Decl. at ¶ 19. Mr. Station denies making this comment. Station Dep. at 57:16-58:9.

During a performance review on December 17, 2020, Ms. Kang asked her manager, if her exclusion from meetings and problems with her team was because she was a person of color, to which Mr. Station responded no. Dkt. #34 ("Steele Decl."), ¶ 7, Ex. B.

Coworkers on the "Sales Team" exchanged messages referring to Ms. Kang using derogatory Asian stereotypes. *See* Dkt. #41 ("Wyatt Decl."), Ex. H (calling Kang a "ninja" and the response from Tim Flood that he "love[s] it"); Ex. I (mocking Kang as liking "big words" and responding, "thanks China" and "jina virus"); Ex. J (categorizing Kang as having "Chinese aggression").

Nevertheless, in her deposition, Ms. Kang stated that she never complained to Boeing about any raced-based mistreatment during her employment. *See* Kang Dep. at 179:25-180:14; 275:10–16; 277:6–278:9; 279:13–281:1.

Ms. Kang states that in February 2021, during a call with a client, a colleague began to discuss details Boeing did not have authorization to discuss and she cautioned the team to limit discussions to existing authorizations. Kang Decl. at ¶ 12-15, 49-50, 59-60, 61. Boeing states

that this kind of discussion was in fact ordinary and expected to ensure compliance. Breding Decl. at ¶ 9, Dkt. #32 Malveaux Decl., ¶ 9, Dkt. #36 Voboril Decl., ¶ 9.

Boeing states that some of its customers did not want Ms. Kang to be part of negotiations and on February 4, 2021, Ms. Kang was ordered not to communicate with clients moving forward. Station Dep. at 27:14-29:19; 35:2-36:18. Boeing states that Ms. Kang did not follow orders and communicated with clients she was not authorized to. Station Dep. at 45:16-48:7; Dkt. #40-7.

Ms. Kang was fired on February 11, 2021. Kang Decl. at ¶ 62.

On February 9, 2024, Ms. Kang filed this suit alleging unlawful discrimination, breach of contract, hostile work environment, wrongful discharge in violation of public policy and retaliation for her reporting discrimination and raising compliance issues. Dkt #1-1.

## III.    DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v.*

*U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

    **1. Unlawful Discrimination**

Both Title VII and WLAD prohibit employers from discriminating against employees on the basis of certain classifications, including race, national origin, and gender. Under both laws, courts analyze claims of individual employment discrimination under the three-phase burden-shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005); *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wn.2d 516, 526, 404 P.3d 464, 470 (2017). The initial burden rests on the plaintiff to make out a prima facie case of disparate treatment, which raises a rebuttable presumption of discriminatory intent. *Coghlan*, 413 F.3d at 1094; *see also Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019); *Hittle v. City of Stockton, California*, 101 F.4th 1000, 1011–12 (9th Cir. 2024). Once a prima facie case is established, the burden shifts to the defendant to proffer a non-discriminatory reason for the alleged mistreatment. *Weil*, 922 F.3d at 1002; *Hittle*, 101 F.4th at 1012. The burden then shifts back to the plaintiff to establish that the proffered reason is merely pretextual and not worthy of credence, or that discriminatory animus was nonetheless a motivating factor. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004); *Weil*, 922 F.3d at 1002; *Hittle*, 101 F.4th at 1012.

At the summary judgment stage, the Court must "zealously guard[ ] an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest*, 360 F.3d at 1112.

### i.    Prima Facie Case

Ms. Kang argues that Boeing discriminated against her because of her Asian race when discharging her and engaging in other adverse employment actions. Dkt #39 at 17.

To establish unlawful discrimination, Ms. Kang must show that she "(1) [ ]is a member of a protected class; (2) [ ]was qualified for h[er] position; (3) [ ]experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). Because she bears the initial burden of proof, to survive summary judgment Ms. Kang must at a minimum raise a dispute of a material fact as to each element of the prima facie case. *Celotex Corp.*, 477 U.S. at 322.

It is undisputed that Ms. Kang satisfies the first and third element, as she is a member of a protected class being an Asian woman, and her employment was terminated. Boeing disputes whether Ms. Kang was qualified for her position and whether similarly situated individuals outside her protected class were treated more favorably, or whether there were other circumstances giving rise to an inference of discrimination. *See* Dkt. #27. The Court finds that Boeing's arguments rely on genuine disputes of material fact. Although Boeing correctly points out that Ms. Kang lacks evidence that shows that similarly situated individuals outside her protected class were treated differently, she has presented other circumstances surrounding her

1
2
3

termination that could give rise to an inference of discrimination. For example, the comments from Mr. Station and the derogatory remarks made by coworkers are sufficient to establish a prima facie case. Therefore, the Court will move to the next step.

### ii.    Legitimate, Nondiscriminatory Reason for Termination

4
5
6
7
8

Boeing argues that it has met its burden to show there were multiple legitimate, nondiscriminatory reasons for terminating Ms. Kang's employment because she was not performing in a satisfactory manner. *See* Dkt. #27 at 12.

9
10
11
12
13
14

First, Boeing argues that Ms. Kang had a difficult relationship with her co-workers and showed a pattern of behavior that was disruptive to the company and prevented her from fulfilling her duties. Multiple declarations submitted by Boeing from former co-workers refer to Ms. Kang as "extremely volatile", having a "toxic leadership style," and other similar comments regarding her character. *See* Dkt. #29 ("Breeding Decl."); Jones Decl.

15
16
17
18
19
20
21
22
23

Second, Boeing argues that Ms. Kang was inappropriately communicating with clients and going against direct orders from her manager. Boeing submits emails discussing Ms. Kang's interactions with clients. In one instance, a client was upset after a meeting where Ms. Kang "sowed significant doubt over the configuration issue in his mind" and the client was upset. Dkt. #30-1. Despite the fact Ms. Kang was given instructions by her manager not to participate in client engagements until she talked to him, Ms. Kang proceeded to attend a meeting. *See* Dkt. #40-7.

24
25
26

Ms. Kang fails to adequately refute this evidence in her response. She mainly relies on her previous performance reviews and texts between co-workers to establish her claim but fails to address Boeing's evidence regarding her relationships with co-workers and clients.

27
28

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

The Court finds that Boeing has met its burden of production to articulate a legitimate, non-discriminatory reason for terminating Ms. Kang's employment. The multiple declarations from co-workers and supervisors alike give Boeing more than one valid, non-discriminatory reason for terminating Ms. Kang's at-will employment. Her difficult relationships with co-workers, which are not disputed by Ms. Kang, would be enough to terminate her in efforts to protect Boeing's employees and improve its work environment. Additionally, her communications with clients that went outside of her scope of employment, along with ignoring direct orders not to communicate, are a legitimate reason to terminate her employment.

### iii.    Evidence of Pretext

To show that the above reasons were pretextual, or perhaps to show direct evidence of discriminatory intent, Ms. Kang argues that her eventual boss, Mr. Station, informed her that "she was the subject of illegal discrimination." Dkt. #39 at 16. Ms. Kang argues that in that conversation with Mr. Station he said "all I can say is that you're the only Asian executive in BDS Finance" regarding how Ms. Kang's superiors, Ms. Hibbard and Ms. Carett, thought of her. *Id.* Ms. Kang asserts that, although the comments were not made directly to her by her superiors, Boeing is still liable. *Id.* (citing *Galdamez v. Potter*, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005) (explaining that an employee can prove gender discrimination "where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus"). Ms. Kang further argues that since the Court must accept Mr. Station's statement as true for this Motion's purpose, and two white female superiors made that statement "it is a reasonable inference this

was a substantial factor in her termination" since Ms. Hibbard was "the driving force behind the decision to terminate." *Id.* at 16-17.

Additionally, Ms. Kang argues that there was "other evidence of racial animus by Hibbard and those within the Sales Team who were pushing Hibbard and Station to terminate Kang." Dkt. #39 at 17. Ms. Kang specifically points to the instant messages between leaders of the Sales Team exchanged messages referring to Ms. Kang using derogatory Asian stereotypes. Ms. Kang also argues that these individuals were the same individuals "falsely spreading stories of 'customers' being unhappy" with Kang. *See* Kang Decl. at ¶¶ 6-7, 26-27, 29, 33-41, 43-44. Ms. Kang points out that Washington State follows the cat's paw theory of discrimination where "the employer does not escape liability if an unbiased decision maker disciplines an employee where a biased subordinate who lacks decision-making power clearly caused such discipline." *Worland v. Kitsap County*, 29 Wash. App. 2d 818, 828, 546 P.3d 446 (2024). Ms. Kang argues that she was "treated differently, poorly, and terminated for reasons that were influenced by discriminatory animus of both people with supervisory authority (Hibbard) as well as co-workers who influenced Hibbard and Station." Dkt. #39 at 18.

Lastly, she argues that past written performance reviews from 2019 and 2020, as well as one provided four weeks before her termination, contradict Boeing's claim that she was not performing in a satisfactory manner. She argues that her "reviews, history of success, and long tenure with the company," along with Boeing's "shifting explanations," create at a minimum an issue of fact. *Id.*

In its reply, Boeing calls the coworker instant messages "stray remarks" and not evidence of discrimination. Boeing points out that Ms. Kang only claims Mr. Station made a comment about the demographics of the Finance team, a comment which Mr. Station has

denied making, and that Mr. Station will testify that actually there was another Asian woman on the Finance executive team. Dkt. #42 at 5. Further, Boeing argues that although Ms. Kang attempts to establish cat's paw liability by pointing out messages between two coworkers, she has "failed to identify any evidence these peers influenced Boeing's decision to terminate her employment," and therefore, summary judgment is appropriate. *Id*. Boeing argues that because Ms. Kang did not offer any evidence these coworkers were involved in her dismissal "their comments were stray remarks and cannot be used to establish any discriminatory intent by Boeing." *Id*. at 5-6. (citing *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (quoting *Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989) (finding "stray 'remarks, . . . when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decisionmaker in issue.'").

Additionally, Boeing argues that Ms. Kang has failed to establish an issue of material fact concerning her performance. Boeing argues that both the 2019 and 2020 performance reviews Ms. Kang relies on to show there were no concerns with her behavior included negative comments about "her demeanor and communications." Dkt #42 at 6. Boeing repeats that Ms. Kang failed to identify "any similarly-situated individual who Boeing treated more favorably than her." *Id*. at 7. Boeing argues that Ms. Kang was not able to find anyone who retained their employment "after persistently belittling colleagues, angering Boeing customers, and violating a direct order not to communicate with a customer." *Id*.

Ms. Kang's failure to point out specific instances where these comments were shared with the decision-making individuals makes the cat's paw theory inapplicable. The Court finds that, viewed in the light most favorable to Plaintiff, the comments by Mr. Station about Ms.

Kang's lonely status as an Asian woman in finance are uncomfortable but do not demonstrate racial animus. Ms. Kang's claim is based on her own speculation as to what might have led to her termination and Boeing has otherwise established a legitimate non-discriminatory reason which Ms. Kang has failed to show is pretextual. Although Ms. Kang points out the derogatory remarks two co-workers made, she is unable to show evidence there is a connection between such comments and Ms. Hibbard, who was recognized by Ms. Kang as "the driving force behind the decision to terminate". Dkt #39 at 16-17. *See Baker v. United Parcel Serv., Inc.*, 23-4364, 2024 WL 5001476, at *2 (9th Cir. Dec. 6, 2024) (analyzing cat's paw theory argument and finding no genuine dispute of material fact when plaintiff presented no evidence that his managers (the decisionmakers) were biased against him). Given all the above, Ms. Kang has failed to demonstrate evidence of pretext sufficient to survive summary judgment and this claim will be dismissed.

### 2.  Wrongful Discharge in Violation of Public Policy

Ms. Kang's second claim is that Boeing wrongfully discharged her in violation of public policy after she reported the above discrimination and after she raised issues regarding compliance with laws when handling business deals. Dkt. #39 at 19.

To establish a prima facie case of wrongful discharge in violation of public policy, an employee must show that their "discharge may have been motivated by reasons that contravene a clear mandate of public policy" and "that the public-policy-linked conduct was a significant factor in the decision to discharge" them. *Mackey v. Home Depot USA, Inc.*, 12 Wash. App. 2d 557, 577-78, 459 P.3d 371, 384 (2020) (internal quotation marks omitted) (quoting *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 725, 425 P.3d 837 (2018)). Courts generally limit wrongful discharge in violation of public policy claims to four categories: termination for refusing to

commit an illegal act; termination for performing a public duty or obligation; termination for exercising a legal right or privilege; and termination in retaliation for whistleblowing. *Id.* at 578

Once a plaintiff makes a prima facie showing that they were wrongfully discharged in violation of public policy, the burden of proof shifts to the employer, who must articulate a legitimate reason for the discharge. *Id.* at 580, 459 P.3d 371. The burden is one of production, not persuasion, so the employer only needs to introduce evidence that, taken as true, permits the conclusion that its reason was lawful. *Id.* at 580-81.

If the employer can articulate a legitimate reason, "the burden shifts back to the employee to produce sufficient evidence to establish" that "the employer's alleged ... reason for the adverse employment action was pretextual or that even if the stated reason was legitimate, ... violation of public policy also was a substantial motivating factor." *Id.* at 581. A factor supporting a retaliatory motive is a temporal proximity between the protected activity and the adverse employment action. *Hollenback v. Shriners Hosps. for Child.*, 149 Wash. App. 810, 823, 206 P.3d 337, 344 (2009). A plaintiff's conclusory allegations, unsupported by facts, are insufficient to survive summary judgment. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003).

### i. Discrimination Claim

Because Ms. Kang's underlying claim for unlawful discrimination has been dismissed and Boeing has adequately argued that this claim cannot survive without the underlying claim, this derivative claim must also be dismissed.

### ii. Whistleblower Retaliation Claim

- **Prima Facie Case**

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 12

Ms. Kang claims that Boeing terminated her employment after she engaged in statutorily protected activity by raising issues regarding legal violations when handling business deals. Dkt #39 at 19. Boeing disputes this framing by arguing that Ms. Kang constantly engaged in similar conversations regarding compliance, that she is in essence describing her day-to-day job, and that it was not a significant factor in her termination. However, viewed in the light most favorable to Ms. Kang, the temporal proximity between the alleged protected activity and Ms. Kang's termination is sufficient for a prima facie case.

■ **Legitimate Reason for Termination**

Boeing admits that Ms. Kang did engage in conversations regarding compliance and shared her opinion with supervisors and co-workers, however it points out that multiple co-workers constantly engaged in similar discussions to ensure compliance. Breding Decl.at ¶ 9, Malveaux Decl.at ¶ 9, Voboril Decl. at ¶ 9. Boeing emphasizes the fact that Ms. Kang admitted in her declaration that she was not aware of any actual violations, she only had "strong suspicions" that they were occurring when she was not around. Kang Dep. at 208:3–21. Boeing argues that these conclusory statements are not evidence that her termination might have been motivated by her routine conversations regarding compliance issues with co-workers nor that it was a *significant factor* in her dismissal. Dkt #27 at 13.

Furthermore, Boeing argues that Ms. Kang's claim fails because Boeing has already articulated a "lawful and compelling reason for her dismissal." Dkt. #27 at 16. Boeing points out again that the reason Ms. Kang's employment was terminated was her mistreatment of co-workers and clients, along with her failing to follow orders to not communicate with clients.

The Court finds that Boeing has met its burden of production to articulate a legitimate, non-retaliatory reason for terminating Ms. Kang's employment. As discussed *supra*, Boeing

has established for the purpose of this motion that the reason for terminating Ms. Kang's employment was her performance, difficult relationships, and failure to comply with orders.

■ **Evidence of Pretext**

Ms. Kang will testify that she had a legitimate belief that her superiors were engaging in legal violations, and she raised those concerns to her superiors. Kang Decl. at ¶ 12-15, 49-50, 59-60, 61. She argues that she was fired within less than two weeks after raising those concerns and the series of events meet her burden. Ms. Kang further argues that Boeing's current employees stating that Boeing followed the law is not compelling evidence and the only reason she intervened was because people "seemed very prepared to go across the line." Dkt #41-7 at 208:3–21. Ms. Kang also argues that Boeing's assertion that she admitted she never reported compliance issues is false. Ms. Kang states that she explained in her declaration and deposition multiple instances where she reported the issues. Kang Decl. at ¶¶ 12-15, 46-47, 50, 59, 62 & Ex. G.; *See, e.g.*, Dkt #41-7 at 208:3-21, 214:9-217:10; Dkt #41-15 ("Gillard Dep."), 51:23 – 52: 4.

In its reply Boeing argues that Ms. Kang's reliance on self-serving assertions in her declaration is insufficient to create a genuine issue of material fact. Boeing argues that the only evidence on the record regarding Ms. Kang raising compliance concerns is the email she sent to Mr. Station where she informed him she "'put up a caution flag' when a client 'made clear that they intend[ed] to proceed' in a fashion that had the potential to implicate certain laws governing communications between certain parties." Dkt. #42 at 9. Boeing argues that Ms. Kang never reported unlawful conduct while being employed at Boeing.

Ms. Kang's expected testimony about statements she made, even without a paper trail, can constitute evidence. However, the Court ultimately agrees with Boeing. Although the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 14

Court takes into consideration the relatively short period of time between Ms. Kang's email to Mr. Station and her termination, there is no causal link or evidence that it was a substantial factor in the decision to terminate her employment. Ms. Kang would admit that she has been raising compliance issues for years now. This weakens Ms. Kang's argument that her termination was in retaliation to her raising concerns on a single occasion. The Court is left with the impression that she was simply doing her job. Without the timing of the firing playing a role, Ms. Kang's assertions to establish pretext are otherwise speculative. There is no genuine issue of material fact and this claim is properly dismissed on summary judgment.

### 3.  Retaliation under the WLAD

Ms. Kang's third claim is that Boeing retaliated against her in violation of the WLAD after she engaged in protected activities such as informing her supervisor about her treatment by BDS leadership and raising issues regarding compliance. Dkt #39 at 19.

To establish a prima facie case for retaliation, the plaintiff must show (1) she engaged in a protected activity, (2) the employer took an adverse action, and (3) a causal link exists between the protected activity and the adverse action. *Moba v. Total Transp. Servs. Inc.*, 16 F. Supp. 3d 1257, 1267 (W.D. Wash. 2014), citing *Hines v. Todd Pacific Shipyards Corp.*, 127 Wash.App. 356, 374, 112 P.3d 522 (2005). Retaliation claims under WLAD use the same *McDonell Douglas* burden-shifting framework as discrimination claims. *Moba*, 16 F. Supp. 3d at 1267. A plaintiff can show causation by showing that retaliation was a "substantial factor in the adverse employment action." *Id*. Second, if Plaintiff establishes a prima facie case, Boeing can rebut the claim by presenting evidence of a legitimate non-discriminatory reason for the adverse action. *Id*. (citing *Renz v. Spokane Eye Clinic*, P.S., 114 Wn. App. 611, 618 (2002)).

Third, the burden then shifts back to Plaintiff to show that Boeing's proffered reason is pretextual.

It is undisputed that Ms. Kang satisfies the second element as her employment was terminated. Boeing disputes whether Ms. Kang engaged in a protected activity by asking a question and whether there is a causal link between Ms. Kang's alleged protected activity and her termination. *See* Dkt. #27. Boeing argues Ms. Kang's termination was due to her behavior with coworkers and clients as discussed *supra*, not discrimination. Boeing points out that although Ms. Kang claims she was retaliated against after raising concerns about her treatment by BDS leadership, it is undisputed that Ms. Kang did not make a complaint about race-based mistreatment to Boeing's Ethics, Human Resources, Law Department, or any other person at Boeing. *Id* at 14. Boeing argues that Ms. Kang never raised these discriminations concerns to anyone prior to her employment being terminated. Ms. Kang points to several conversations about race but never claimed she was treated less favorably. Kang Dep. at 179:25-180:14; 275:10–16; 277:6–278:9; 279:13–281:1. Boeing further argues that Ms. Kang did not engage in protected activity by asking a question about race and that caused her termination. Boeing argues that Ms. Kang asking her manager if her race was a factor for being excluded from meetings is not a statutorily protected action. Dkt. #27 at 14.

Ms. Kang does not respond to any of these arguments. *See* Dkt #39 at 19.  The Court agrees with Boeing and finds that she has failed to present an essential element of her retaliation claim and dismissal under summary judgement is appropriate.

### 4.  Breach of Contract

Ms. Kang's fourth claim is that Boeing breached its employment contract by terminating her employment without following certain policies. Dkt #39 at 25.

Employment policies and procedures can create enforceable promises concerning terms of employment when a company's written materials induce an employee to continue working by creating an atmosphere of job security and fair treatment through promises of specific treatment in specific situations. *Quedado v. Boeing Co.*, 168 Wn. App. 363, 367-68 (2012). To establish such a claim, a plaintiff must show that she justifiably relied on an employer's statement, the statement amounts to a promise of specific treatment in specific situations, and that the promise was breached. *Id*. at 369.

Boeing argues that it did not breach any employment contract by terminating Ms. Kang's at-will employment because the documents Ms. Kang relies on do not constitute an enforceable contract. Dkt. #27 at 21. Boeing contends that the written materials Ms. Kang relies on are Boeing's best practice guidance regarding discipline dismissal of employees known as the Employee Corrective Action Process Requirements (ECARP), and PRO-1909 policies and not an enforceable contract. Shapero Decl., ¶¶ 7–8, Exs. G, H. Furthermore, Boeing states that a court has already held that the documents Ms. Kang relies on are not an enforceable contract in another case. *See Leonard v. Boeing Co*. C19-956 TSZ, 2020 WL 5369301, at *4 (W.D. Wash. Sep. 8, 2020). In *Leonard*, the court dismissed a similar breach of contract claim which relied on the same internal policies and held as a matter of law that these policies were not promises of specific treatment an employee could have reasonably relied on.

In her response, Ms. Kang argues that she was trained to follow the ECARB and PRO-1909 processes and Boeing breached its contract by failing to apply them to her. Ms. Kang argues there was management training that "stated with specificity—and *without* disclaimers asserting no agreement could be formed—that Boeing would follow this process and managers such as Kang were instructed to follow this process." Dkt. #39 at 25 (emphasis in original).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 17

Therefore, Ms. Kang reasonably relied on the training documents and assumed she would be protected by the ECARB process to continue her employment. Kang Decl. at ¶ 28 & Ex. D. She says that in her case Boeing did not follow the ECARB process as no ECARB board met and she was not given a Corrective Action Memo, while in *Leonard* "the ECARB process was followed but the employee was unhappy with the result." *Id.* She argues that these facts make her case distinguishable from *Leonard*.

The Court again ultimately agrees with Boeing. The trainings instructed Ms. Kang to look at the written policy which states it is not a contract. On the first page of the training documents Boeing included a paragraph stating "[t]his procedure does not constitute a contract or contractual obligation, and the company reserves the right, in its sole discretion, to amend, modify, or discontinue its use without prior notice, notwithstanding any person's acts, omissions, or statements to the contrary." Dkt. #28 at 28-7 and 28-8. These procedures are thus internal policies which provide a framework for employees and supervisors dealing with different violations, not terms of a contract.

Furthermore, this Court is willing to apply the holding of *Leonard* to the facts of this case. Given all the above, there is no genuine dispute as to the facts surrounding Ms. Kang's breach of contract claim. Accordingly, this claim is properly dismissed on summary judgment.

### 5. Hostile Work Environment

Ms. Kang's fifth claim is that she was subject to a hostile work environment due to her Asian race. Dkt #39 at 25.

To prevail on a race-based hostile work environment claim under the WLAD, Plaintiff must show: "(1) she was subjected to verbal or physical conduct of a racial . . . nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

conditions of the plaintiff's employment and create an abusive work environment." *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998). The conduct must also be imputable to the employer. *Antonius v. King County*, 153 Wn.2d 256, 261, 103 P.3d 72 (2004). WLAD does not contain its own limitations period. Discrimination claims must be brought within three years under the general three-year statute of limitations for personal injury actions. *Id*. (citing RCW 4.16.080(2)). The continuing violation doctrine allows a plaintiff to seek relief for the cumulative effects of repeated conduct that began outside the limitations period and continued into the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-21, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). However, this doctrine does not apply to discrete acts that are time-barred, even when they relate to acts within the limitations period. *Id*. Furthermore, the doctrine also does not apply to the continuing impact from a wrongful act outside the limitations period. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).

First, Boeing asserts that Ms. Kang's bases for this claim are time-barred as the continuing violation doctrine does not apply to her. Boeing argues that all the "discrete acts" Ms. Kang alleges occurred in 2020 or earlier. Dkt #27 at 18.

Second, Boeing argues even if Ms. Kang's claims are not time-barred, she fails to provide any evidence of severe or pervasive race-based workplace harassment. *Id*. Boeing argues out that although Ms. Kang claimed that Carol Hibbard excluded her from multiple meetings, this was assumed by Ms. Kang, not based on actual knowledge. Boeing points to Ms. Kang's depositions where she was asked if there was any way in which Ms. Kang believed Ms. Hibbard treated her less favorably than others because of her race, to which Ms. Kang responded "I don't know what she was thinking. So I can't say what actions were motivated by racial animus versus not." Kang Dep. at 202:7–21. Boeing argues that Ms. Kang admitted she

had no basis her being excluded was due to any discriminatory reasons. Further, Boeing also points out that Carol Hibbard testified she did exclude Ms. Kang from certain meetings but it was because Ms. Kang was "difficult and argumentative, as because a P-8 customer requested not to interact with her." Dkt #28-6 ("Hibbard Dep."), 12:13–17:20; 21:24–22:12.

Third, Boeing argues that Ms. Kang being told she was "wrong" does not constitute race-based severe or pervasive workplace harassment. For example, Ms. Kang's claims of raced-based mistreatment by Ann Marie Bender, BDS legal counsel, and Ms. Bender and Rebecca Davies, Ms. Kang's temporary manager, would "take turns, like, sniping at [her]" while on a call with Ms. Kang. Kang Dep. at 189:1–10. Boeing again points to Ms. Kang's deposition where she testified "I don't know what's in her head," and "I don't know what motivated her treatment of me" referring to Ms. Bender. *Id*. at 188:12–23. Additionally, Ms. Kang testified "I don't know what she did for what reason" and "I don't know what's in her head." *Id*. at 203:19-20 and 188:12– 16. Furthermore, when asked what Ms. Bender sniped at Ms. Kang about, Ms. Kang responded, "I mean, I would say something—and this had been going on for a long time, I mean, almost from the day I joined finance, where I would say something, and whether it was Darrin, Ann Marie, or someone else, like they would say I was wrong, for example." Boeing emphasizes that Ms. Kang admitted she could be wrong in her assumptions when she was asked if it was possible she was wrong to which she responded, "I suppose so, yes." *Id*. at 190:24–191:8. Boeing uses all of this to argue that Ms. Kang has no good-faith basis-in-fact for her assertions that she was harassed because of her race.

Lastly, Boeing also points to several parts of Ms. Kang's deposition and argues Ms. Kang failed to show the BDS legal department engaged in race-based severe or pervasive conduct. Dkt. #27 at 20. Boeing cites multiple parts in Ms. Kangs deposition where she asserted

she was yelled at and had unpleasant exchanges with Boeing attorneys Darrin Hostetler and Jake Phillips. However, Boeing argues that Ms. Kang admitted the alleged poor treatment she received was not because of her race, rather it was based on legal advice they disagreed on. Additionally, Boeing argues Ms. Kang conceded she had "no idea if Phillips or Hostetler may have similarly treated others outside her protected classes." *Id.*

In her response, Ms. Kang does not respond to any of these arguments other than by stating that she filed her case on February 9, 2024, therefore she still has a hostile work environment claim for actions that occurred between February 9 and her termination on February 11, 2021. Dkt. #39 at 25.

In its reply, Boeing argues Ms. Kang admitted that her claim can only be based on harassing conduct that happened in the last few days she was employed at Boeing, but that she does not point to any conduct that happened in those three days between February 9 and February 11. Dkt. #42 at 7.

Ms. Kang has failed to demonstrate that Boeing's employees alleged conduct was sufficiently pervasive to constitute a constant hostile work environment. While it is true that a workplace may still feel hostile even in the absence of race-based comments on a particular day, the law requires more than isolated or discrete incidents. The comments Ms. Kang is basing her claim on are discrete in nature and do not rise to the level of severity or pervasiveness required to establish a race-based hostile work environment. Furthermore, Ms. Kang admitted in her deposition she was assuming the comments were race motivated, but she failed to provide any evidence her perception was correct. Her deposition testimony repeatedly undermines her allegations. Additionally, her lack of a response in briefing leaves the Court with nothing to refute Boeing's arguments. Therefore, even seeing the comments in the light

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 21

most favorable to Ms. Kang, they are discrete at best and do not amount to pervasive behavior by Boeing. Accordingly, this claim is properly dismissed on summary judgment.

### 6. Fed. R. Civ. Proc. 56(d)

Under Fed.R.Civ.P. 56(d), "the district court may refuse to grant the party's application for summary judgment if the opposing party needs time to discover central facts." *Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 523 (9th Cir. 1989)

Furthermore, if a nonmovant shows by declaration or affidavit it cannot present facts essential to justify its opposition for specific reasons, the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The court may order a continuance for a summary judgment motion if the requesting party "submits affidavits showing that, without Rule 56 assistance, it cannot present facts necessary to justify its claims." *Family Home and Fin. Center, Inc. v. Fed. Home Loan Mortg. Corp.,* 525 F.3d 822, 827 (9th Cir. 2008). The party making the request must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Id.* The party must also show it has diligently pursued discovery. *Qualls By and Through Qualls v. Blue Cross of Cal., Inc.,* 22 F.3d 839, 844 (9th Cir. 1994). If the requesting party does not comply with these requirements, the court may proceed to summary judgment. *Id.* The burden lies with "the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists" and that it would prevent summary judgment. *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 921 (9th Cir. 1996).

In her response, Ms. Kang asserts this motion should be continued. Ms. Kang argues that "Boeing has still yet to produce the bulk of Electronically Stored Information ("ESI") it

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 22

possesses that may be responsive to discovery requests issued to Boeing over nine months ago" Dkt. #39 at 25-26.

In its reply, Boeing argues that Ms. Kang has failed to identify any specific fact she would obtain with further discovery as requested. Boeing asserts that this "vague assertion" is insufficient as a matter of law." Dkt #42 at 12. (citing *Moba*, 16 F. Supp. 3d at 1262.) Boeing further argues that Ms. Kang remained silent on her alleged discovery diligence because she is unable to do so in good faith. Boeing argues that Ms. Kang did not serve any discovery requests until six months after filing her lawsuit and she did not request an ESI search after a year of her initial filing.  Moreover, Boeing points out to several instances where Ms. Kang failed to request discovery in a timely manner and missed deadlines. For these reasons Boeing argues the Court should deny Ms. Kang's request. *Id*. at 13.

The discovery process has now closed, and Ms. Kang does not point to any specific evidence or central facts she is hoping to discover. Merely suggesting that further discovery might uncover something useful, particularly at this late stage of discovery, is insufficient to delay a resolution. This request is denied.

## IV.    CONCLUSION

Having considered the briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion for Summary Judgment, Dkt. #27, is GRANTED. Plaintiff's claims are DISMISSED.  This case is CLOSED.

DATED this 21st day of July, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 23